



Luther D. Thomas
Clerk, U.S. District Court
75 Spring St., Room 2211
Atlanta  GA  30303

April 04, 2003

RE: 02-11652-CC      Sierra Club v. Atlanta Regional Comm.
DC DKT NO.:  01-00428 CV-BBM-1

TO:   Luther D. Thomas

CC:   S. Wesley Woolf

CC:   Robert E. Yuhnke

CC:   J. David Farren

CC:   William R. Bassett

CC:   Harvey M. Koenig

CC:   Daniel M. Formby

CC:   Rene O. Lerer

CC:   Patricia T. Barmeyer

CC:   Michael R. Fisher

CC:   Mikel Lemual Purcell

CC:   Ronald Spritzer

CC:   Lewis B. Jones

CC:   Administrative File

CC:   Administrative File

# United States Court of Appeals

RECEIVED IN CLERK'S OFFICE Eleventh Circuit
U.S.D.C. Atlanta    56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Thomas K. Kahn
Clerk

APR 0 7 2003

LUTHER D. THOMAS, Clerk
By: _CPM89_
Deputy Clerk

In Replying Give Number
Of Case And Names of Parties

April 04, 2003

Luther D. Thomas
Clerk, U.S. District Court
75 Spring St., Room 2211
Atlanta GA 30303

RE: 02-11652-CC    Sierra Club v. Atlanta Regional Comm.
DC DKT NO.: 01-00428 CV-BBM-1

The enclosed certified copy of the judgment and a copy of this court's opinion are hereby issued
as the mandate of this court.

Also enclosed are the following:
    Original Exhibits, consisting of: One envelope
    Original record on appeal or review, consisting of: Nineteen volumes

The district court clerk is requested to acknowledge receipt on the copy of this letter enclosed
to the clerk.

A copy of this letter and the judgment form, but not a copy of the court's opinion or Rule 36-1
decision, is also being mailed to counsel and pro se parties. A copy of the court's opinion
or Rule 36-1 decision was previously mailed to counsel and pro se parties on the date it was issued.

                    Sincerely,

                    THOMAS K. KAHN, Clerk

                    Reply To: Daniel Laurence

Encl.

MDT-1 (8-2002)

# United States Court of Appeals

## For the Eleventh Circuit



No. 02-11652

District Court Docket No.
01-00428-CV-BBM-1

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT

Oct 30, 2002

THOMAS K. KAHN
CLERK

SIERRA CLUB,
SOUTHERN ORGANIZING COMMITTEE
FOR ECONOMIC AND SOCIAL JUSTICE, et al.,

Plaintiffs-Appellants,

versus

ATLANTA REGIONAL COMMISSION,
CHARLES KRAUTLER, Director,
Atlanta Regional Commission, et al.,

Defendants-Appellees,

ADVOCATES FOR SAFE AND EFFICIENT
TRANSPORTATION,

Intervenor-Appellee.

-------------------------------------------------------------------
Appeal from the United States District Court
for the Northern District of Georgia
-------------------------------------------------------------------

## J U D G M E N T

It is hereby ordered, adjudged, and decreed that the attached opinion included herein by reference, is entered as the judgment of this Court.

Entered:    October 30, 2002
For the Court:    Thomas K. Kahn, Clerk
By:    Eggleston, Nataki

ISSUED AS MANDATE
APR 0 4 2003
U.S. COURT OF APPEALS
ATLANTA, GA.

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia

[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

```
                          FILED
                     U.S. COURT OF
                        APPEALS
                    ELEVENTH CIRCUIT
                      OCT 30, 2002
                    THOMAS K. KAHN
                        CLERK
```

No. 02-11652

D. C. Docket No. 01-00428-CV-BBM-1

SIERRA CLUB,
SOUTHERN ORGANIZING COMMITTEE
FOR ECONOMIC AND SOCIAL JUSTICE, et al.,

Plaintiffs-Appellants,

versus

ATLANTA REGIONAL COMMISSION,
CHARLES KRAUTLER, Director,
Atlanta Regional Commission, et al.,

Defendants-Appellees,

ADVOCATES FOR SAFE AND EFFICIENT
TRANSPORTATION,

Intervenor-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

(October 30, 2002)

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and NANGLE[*], District Judge.

PER CURIAM:

The plaintiffs are four public interest organizations[1] that sued the defendant agencies[2] that adopted and approved transportation plans for the Atlanta area. The plaintiff's assert that the defendants did not act in accordance with the law in determining that the transportation plans "conformed" to the applicable State Implementation Plan (SIP) as required by the Clean Air Act. The district court found in favor of the defendants, and the plaintiffs appealed. For the reasons that follow, we affirm.

## BACKGROUND

The Clean Air Act, 42 U.S.C. §§ 7401–7671q, establishes a joint state and federal program for improving the Nation's air quality. Under the Act, the

---

[*]Honorable John F. Nangle, U.S. District Judge for the Eastern District of Missouri, sitting by designation.

[1]The plaintiffs are the Sierra Club, the Southern Organizing Committee for Economic and Social Justice, the Environmental Defense, and the Georgia Coalition for the People's Agenda.

[2]The defendants include the Atlanta Regional Commission (the metropolitan planning organization that developed the transportation plans at issue in this case), the Georgia Department of Transportation, the Georgia State Transportation Board, the directors of these entities, the administrators of the United States Department of Transportation, the Federal Highway Administration, and the Federal Transit Administration.

Environmental Protection Agency (EPA) promulgates national ambient air quality standards for common air pollutants. *Id.* § 7409. Areas with higher concentrations of pollutants than the air quality standards allow are called nonattainment areas. *Id.* § 7407(d)(1)(A)(i). Nonattainment areas are classified as marginal, moderate, serious, severe, or extreme. *Id.* § 7511(a)(1). Atlanta was classified as a "serious" nonattainment area for ozone, which is formed when nitrogen oxides react with volatile organic compounds in the presence of sunlight. Under the Clean Air Act, Atlanta initially had until 1999 to achieve the air quality standards, but that goal was not met.

To move toward achieving the air quality standards, states are required to develop SIPs, which set forth how the air quality standards will be attained and maintained. *Id.* § 7410(a)(1). Because motor vehicle emissions are a major cause of ozone pollution, one way SIPs work toward achieving the air quality goals is by establishing budgeted motor vehicle emissions levels – the amount of motor vehicle emissions that may be produced while still moving toward or maintaining the air quality goals. Once an SIP is approved by the EPA, subsequent transportation plans must "conform" to the SIP. *Id.* § 7506(c). For a plan to "conform" to the SIP, the estimated emissions under the transportation plan must be consistent with the budgeted emissions level under the SIP. 40 C.F.R. § 93.118(a).

3

The dispute in this case concerns whether the transportation plans that the defendants adopted and approved conform to the SIP. The plaintiffs and the defendants filed cross-motions for summary judgment before the district court.[3] The district court denied the plaintiffs' summary judgment motion and granted summary judgment in favor of the defendants.[4] As a result, the plaintiffs brought this appeal,

---

[3] The Advocates for Safe and Efficient Transportation, a coalition of trade organizations and unions representing numerous Atlanta-area workers and businesses that intervened in support of the plans, moved for partial summary judgment on different grounds, alleging a lack of subject matter jurisdiction because the plaintiffs lacked Article III standing and because 23 U.S.C. § 134, forbids judicial review of transportation plans that fail to consider certain planning factors. The district court decided against the Advocates for Safe and Efficient Transportation, finding that the plaintiffs had standing and that § 134 did not bar judicial review in this case. We see no error in the district court's analysis of these issues.

[4] The district court granted summary judgment in favor of the defendants on Counts I and II of the plaintiffs' complaint.

Count I alleges that the defendants approved the Regional Transportation Plan (RTP) for 2025 and the Transportation Improvement Program (TIP) for 2001–2003 in violation of the Act's conformity requirements. Count I provides,

> The actions and decisions by defendants to adopt, submit, accept, approve, fund and assist the 2025 RTP and the 2001–03 TIP are not in accordance with law, in violation of CAA § 176(c)(1)(A), (c)(1)(B), (c)(2), and (c)(2)(A) and related regulations because the motor vehicles emissions analysis prepared by defendants fails to demonstrate that motor vehicle emissions of NOx will be reduced to 214 tpd as required by the MVEB in the applicable SIP during the first four years of the 2025 RTP and at any time during the period when the transportation projects are to be funded under the 2001–03 TIP.
> The actions and decisions by defendants to adopt, submit, accept, approve, fund and assist the 2025 RTP and the 2001–03 TIP are not in accordance with law, in violation of CAA § 176(c)(1) and (2)(A), 42 U.S.C. § 7506(c)(1) and (2)(A), and related regulations because the motor vehicle emissions estimated for at least the first five years of the 2025 RTP and for the entire life of the 2001-03 TIP do not conform to the MVEB in the applicable implementation plan.

arguing that the defendants acted unlawfully in adopting and approving

transportation plans for the Atlanta area, because the plans failed to conform to the

applicable SIP. The transportation planning documents at issue are the Regional

Transportation Plan (RTP) for 2025 and the Transportation Improvement Program

(TIP) for 2001–2003.[5] The plaintiffs argue that the 2025 RTP and the 2001–2003

TIP do not "conform" to the SIP, because neither the statutory nor the regulatory

requirements for conformity are satisfied. The plaintiffs claim that the transportation

plans do not satisfy the statutory definition of conformity, because they delay the

"timely attainment" of the pollution goals. The plaintiffs claim that the

transportation plans do not satisfy the regulatory standard for conformity – the

---

Count II alleges that the defendants wrongfully approved the 2025 RTP and the
2001–2003 TIP in violation of conformity requirements. Count II provides,

> The actions and decisions by defendants to adopt, submit, accept, approve,
> fund and assist the 2025 RTP and the 2001–03 TIP are not in accordance with
> law, in violation of CAA § 176(c)(1)(A) and (B), 42 U.S.C. § 7506(c)(1)(A) and
> (B), because defendants made no lawful finding or determination that the emissions
> of NOx from motor vehicles in the Atlanta nonattainment area in excess of the 214
> tpd NOx MVEB in the "applicable implementation plan" will meet the statutory
> criteria for determining conformity as required by CAA § 176(c)(1)(A) and (B)
> including, but not limited to, a showing that such emissions "will not delay timely
> attainment of any standard or required interim emissions reductions or other
> milestones in any area."

[5]An RTP is a long-term plan that provides an overall framework for making transportation
investment decisions in metropolitan areas. RTPs must be updated every three years. A TIP is a
detailed allocation of funds for projects included in the first three years of the RTP, which must be
updated every two years.

budget test set forth in section 93.118 of the regulations. To satisfy the budget test's requirements for conformity, the plaintiffs argue, the defendants would need to demonstrate that emissions in every year of the plans would be no greater than the SIP's 1999 budgeted emissions level of 214.77 tons per day of nitrogen oxides.

The defendants respond that they properly applied the budget test for conformity. They contend that consistency between the estimated emissions levels under the plans and the budgeted emissions level in the SIP need not be demonstrated for every year of the plans, but only for certain specified analysis years. The defendants chose 2005, 2015, and 2025 as analysis years and demonstrated that in those years the estimated emissions levels fall at or below the budgeted level of 214.77 tons per day and thus comply with the requirements of section 93.118(b).

## DISCUSSION

The question this case presents is what it means for a transportation plan to "conform" to an SIP. In answering this question, the district court focused upon whether the defendants complied with the regulatory test for conformity – the budget test set forth in section 93.118. Rather than focusing upon the regulation, the plaintiffs ask us to begin with the language of the Clean Air Act in determining what it means for a transportation plan to "conform" to the applicable SIP. They contend

that under the Act's definition of conformity,[6] a transportation plan cannot be conforming when it "delay[s] timely attainment" of pollution goals. 42 U.S.C. § 7506(c)(1)(B). Because the estimated emissions under the plans will not fall at or below the SIP's 1999 budgeted emissions level of 214.77 tons per day until 2005, the plaintiffs argue that the plans do not satisfy the statutory definition of conformity.[7]

The same section of the Act that defines conformity, however, specifically directs the EPA to promulgate "criteria and procedures for demonstrating and assuring conformity in the case of transportation plans, programs, and projects." *Id.*

---

[6]The Act defines conformity in § 7506 as follows:

> Conformity to an implementation plan means –
> (A) conformity to an implementation plan's purpose of eliminating or reducing the severity and number of violations of the national ambient air quality standards and achieving expeditious attainment of such standards; and
> (B) that such activities will not –
>> (i) cause or contribute to any new violation of any standard in any area;
>> (ii) increase the frequency or severity of any existing violation of any standard in any area; or
>> (iii) delay timely attainment of any standard or any required interim emission reductions or other milestones in any area.

42 U.S.C. § 7506(c)(1)(A)–(B)(i)–(iii).

[7] To the extent that the plaintiffs are challenging the regulation itself as invalid and inconsistent with the Act's definition of conformity, they are not in the proper forum, because challenges to the EPA's "national applicable regulations" must be brought in the District of Columbia Circuit and are subject to a sixty-day time limit. 42 U.S.C. § 7607(b).

§ 7506(c)(4)(A). Thus, we agree with the district court that the question properly before us is regulatory compliance – in making a conformity determination under the budget test in section 93.118, was it proper for the defendants to pick the years 2005, 2015, and 2025 as analysis years and demonstrate that in those analysis years the estimated emissions would be consistent with the SIP's budgeted emissions level of 214.77 tons per day, or were the defendants required to adopt and approve plans in which the estimated emissions would be consistent with the budgeted emissions level of 214.77 tons per day immediately?

Conformity under the budget test is established by comparing the estimated emissions under the transportation plans with the budgeted emissions under the SIP. If the estimated emissions are less than or equal to the budgeted emissions, the plans conform to the SIP. 40 C.F.R. § 93.118(a). The dispute in this case turns on when consistency between the estimated emissions and the budgeted emissions must be demonstrated. The plaintiffs and the defendants arrive at different conclusions based upon differing interpretations of the language in section 93.118, which provides,

> (b) Consistency with the motor vehicle emissions budget(s) must be demonstrated for each year for which the applicable (and/or submitted) implementation plan specifically establishes motor vehicle emissions budget(s), for the last year of the transportation plan's forecast period, and for any intermediate years as necessary so that the years for which

8

consistency is demonstrated are no more than ten years apart, as
follows:

> (1) Until a maintenance plan is submitted:
>
>> (i) Emissions in each year . . . for which the control
>> strategy implementation plan revision establishes motor
>> vehicle emissions budget(s) must be less than or equal to
>> that year's motor vehicle emissions budget(s); and
>> (ii) Emissions in years for which no motor vehicle
>> emissions budget(s) are specifically established must be
>> less than or equal to the motor vehicle emissions budget(s)
>> established for the most recent prior year.  For example,
>> emissions in years after the attainment year for which the
>> implementation plan does not establish a budget must be
>> less than or equal to the motor vehicle emissions budget(s)
>> for the attainment year.

*Id.* § 93.118(b)(1)(i)–(ii).

The plaintiffs focus upon subsection (b)(1)(ii), which provides that in the

years for which the SIP does not specifically establish an emissions budget, the

estimated emissions must be "less than or equal to the motor vehicle emissions

budget(s) established for the most recent prior year." *Id.* § 93.118(b)(1)(ii).

Because 1999 is the last year for which the applicable SIP establishes an emissions

budget, the SIP does not specifically establish an emissions budget for any of the

years of the plans.  Thus, the plaintiffs argue that for every year of the plans, the

estimated emissions must be "less than or equal to" the emissions budget

established for 1999, which is 214.77 tons per day of nitrogen oxides.  The plaintiffs

claim that the defendants violated this regulation by finding that the plans conform

9

to the SIP even though the estimated emissions would not fall at or below the

budgeted level for the most recent prior year – 214.77 tons per day – until 2005.

Because subsection (b)(1)(ii) was not satisfied, the plaintiffs argue, the defendants

failed to act in accordance with the law in finding the plans to be conforming.

The defendants respond that the plaintiffs are taking subsection (b)(1)(ii) out

of context. The defendants argue that the budget test does not require that

consistency between the estimated emissions under the plans and the budgeted

emissions under the SIP be demonstrated for every year of the plans; rather,

subsection (b) explains that the consistency demonstration must be done for certain

analysis years. The defendants argue that their selection of 2005, 2015, and 2025 as

analysis years satisfies the criteria of subsection (b). The first criterium in

subsection (b) – requiring a consistency demonstration for "each year for which the

[SIP] specifically establishes motor vehicle emissions budget(s)" – does not apply,

the defendants argue, because the last year for which the SIP established a budgeted

emissions level was 1999. Because 1999 already passed, none of the years of the

plans were years in which the applicable SIP "specifically establishes motor vehicle

emissions budget(s)." The second criterium required that consistency be

demonstrated "for the last year of the transportation plan's forecast period," which

would be 2025 in this case. The third criterium required that consistency be

10

demonstrated for "any intermediate years as necessary" in such a way that the years

for which consistency is demonstrated are no more than ten years apart, which is

satisfied by demonstrating consistency between the transportation plans and the SIP

in the years 2005, 2015, and 2025.

According to the defendants' interpretation of the regulation, after the

analysis years are selected to meet the criteria in subsection (b), subsections (i) and

(ii) provide the emissions budget that should be used to make the consistency

demonstration in those already selected analysis years.  The defendants assert that

the provision in subsection (ii) requiring that emissions in the years for which the

SIP does not establish a budget must be "less than or equal to the motor vehicle

emissions budget(s) established for the most recent prior year" does not mean that

the estimated emissions under the transportation plans must fall at or below the

1999 budgeted level *for every year of the plans*; rather, subsection (ii) only requires

that if the SIP does not provide a budgeted emissions level for the selected analysis

years, the budgeted emissions level from the most recent prior year of the SIP

applies.  The budget established for the most recent prior year was 214.77 tons per

day, so the defendants interpret subsection (ii) as requiring that in 2005, 2015, and

2025 the estimated emissions fall at or below that level.  Under the transportation

plans, they do.

11

The plaintiffs assert that the defendants' interpretation of the regulation produces an ever-retreating mirage of compliance without ever actually requiring actual emissions reductions. They argue that if defendants are allowed to adopt and approve plans where the first analysis year is five years in the future, the transportation plans will expire before they ever "fit" the budgeted emissions level in the SIP because transportation plans expire and are superseded with new plans every three years. The plaintiffs argue that it would strip the conformity requirement of any meaning if the defendants continually were allowed to push the "day of reckoning" further into the future. Thus, the plaintiffs argue that the defendants should not be allowed to use the selection of analysis years as a way of evading compliance with the budgeted emissions level in the SIP for 1999.

The defendants respond that their interpretation of the analysis does not create an ever-retreating mirage of compliance. Although the plaintiffs allege that the defendants always will be able to push back the "day of reckoning" until some distant day in the future, the defendants contend that this is a misrepresentation of how the pending and future conformity analyses will work. The defendants concede that the EPA's regulations require that the budget test comparison be made for every year for which the applicable or submitted SIP establishes a budgeted emissions level. Georgia has submitted and the EPA has approved an attainment SIP for

12

Atlanta containing a 2004 attainment date and budgeted emissions level. Another panel of this Court issued a stay of that approval and heard oral argument in that case on August 26, 2002. If this Court ultimately allows the EPA's approval of the attainment SIP to stand, the defendants will have to publish a conformity analysis that includes a budget test for 2004. If this Court strikes down the EPA's extension of Atlanta's attainment date, Atlanta will be reclassified as a "severe" nonattainment area, subjected to additional pollution control measures, and given an attainment date of no later than 2005. Thus, whatever the outcome of that litigation, the defendants will have to demonstrate conformity to an updated emissions level by conducting a budget test for 2004 or 2005.

The plaintiffs also claim that subsection (b) is ambiguous and ask us to interpret the regulation in light of the EPA's previous explanations of the regulation. The plaintiffs depend upon the EPA's 1993 explanation of the role that budgets play in the conformity process, which provides, "The emissions budget applies as a ceiling on emissions in the year for which it is defined, and for all subsequent years until another year for which a different budget is defined or until a SIP revision modifies the budget." 58 Fed. Reg. 62,188, 62,194 (Nov. 24, 1993). They also rely upon the EPA's 1997 explanation of the rule, which provides that "[c]onformity of a transportation plan cannot be determined unless all years of the transportation plan

13

are considered." 62 Fed. Reg. 43,780, 43,788 (Aug. 15, 1997). Based upon this

language, the plaintiffs contend that the general requirement of the regulation is that

estimated emissions must fall below the SIP's budgeted emissions for every year of

the plans; the selection of analysis years for making the consistency demonstration

is only a shorthand way of making sure that the more general requirement is

satisfied. If consistency were demonstrated in the selected analysis years, the

defendants could interpolate from the data in the specific analysis years to conclude

that the consistency requirement was satisfied in the in-between years as well.[8]

Thus, the plaintiffs argue that the EPA's statements support their interpretation and

---

[8]To support their theory of interpolation, the plaintiffs rely upon another subsection of the
regulation, which provides,

> The regional emissions analysis may be performed for any years in the timeframe of
> the transportation plan provided they are not more than ten years apart and
> provided the analysis is performed for the attainment year (if it is in the timeframe
> of the transportation plan) and the last year of the plan's forecast period.
> Emissions in years for which consistency with motor vehicle emissions budgets
> must be demonstrated, as required in subsection (b) of this section, may be
> determined by interpolating between the years for which the regional emissions
> analysis is performed.

40 C.F.R. § 93.118(d)(2). The defendants respond that while subsection (b) establishes the
requirements for the selection of analysis years for the budget test, subsection (d) identifies the
years for which the regional emissions analysis must be conducted – and the requirements under
(b) and (d) differ.

14

that any endorsement of the defendants' position by the EPA is due no deference because it conflicts with the EPA's earlier-stated position.[9]

The defendants respond that the position that the EPA took by signing the defendants' brief was consistent with its prior explanations of section 93.118. The defendants rely upon the Notice of Proposed Rulemaking dated July 9, 1996, in which the EPA indicated that the budget test need be demonstrated only in specific analysis years. Following a subheading entitled "For Which Years Would the Budget Test Be Demonstrated," the EPA explains that the budget test would be required for every year for which the SIP establishes a motor vehicle emissions budget, for the last year of the plan, and for intermediate years so that the analysis years are no more than ten years apart. 61 Fed. Reg. 36,112, 36,118–19 (July 9, 1996).

Although we may look to the EPA's interpretation of its own regulation if the regulation is ambiguous, we need not resort to such measures when the language of the regulation is clear. *Christensen v. Harris County*, 529 U.S. 576, 588 (2000)

---

[9]Although an agency's interpretation of its own regulation ordinarily is entitled to deference, the plaintiffs argue that deference is not due if the agency adopts a position inconsistent with its previous positions solely for the purpose of litigation, *see United States v. Mead Corp.*, 533 U.S. 218, 228 (2001), or if the agency's interpretation of the regulation conflicts with the statutory goals, *see Legal Envtl. Assistance Found., Inc. v. EPA*, 118 F.3d 1467, 1478 (11th Cir. 1997) (rejecting the EPA's interpretation of its regulation because it was "inconsistent with the statute").

15

(stating "that an agency's interpretation of its own regulation is entitled to deference" "only when the language of the regulation is ambiguous"). In deciding whether a statute or regulation is ambiguous, we look "to the language itself, the specific context in which that language is used, and the broader context of the [regulation] as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). As we find that section 93.118 is clear and unambiguous, we need not address the EPA's interpretation of the regulation.

Although we acknowledge that the plaintiffs' interpretation has intuitive appeal – if the SIP provides that in 1999 the budgeted emissions level is 214.77 tons per day, it seems strange that transportation plans can be found to be "conforming" to the SIP when that emissions level is not achieved until 2005 – we note that the plaintiffs rely upon a literal interpretation of the language in section 93.118(b)(1)(ii). When we read subsection (ii) in context, we find that the regulation is not ambiguous. Subsection (ii) should not be read in isolation from the rest of the regulation; subsection (ii) qualifies subsection (b), which describes how to pick the analysis years, and provides the emissions budget the defendants must use to make the consistency demonstration in the selected analysis years. Thus, subsection (ii) does not provide that consistency must be demonstrated for every year of the plans; it simply provides that if, as in this case, the selected analysis years are years in

16

which no budget is established in the SIP, the estimated emissions *in those analysis years* must fall at or below the level budgeted in the most recent prior year, which is 214.77 tons per day in this case.

## CONCLUSION

Thus, we agree with the defendants' interpretation of section 93.118 and affirm.

AFFIRMED.

17

A True Copy - Attested:
Clerk, U.S. Court of Appeals
Eleventh Circuit

By: _____
Deputy Clerk
Atlanta, Georgia